## THE SOUTHERN PRINCE.

### PRINCE LINE, LIMITED, v. FIDELITY-PHENIX FIRE INS. CO. OF NEW YORK et al.

District Court, S. D. New York.

Aug. 7, 1942.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (Roger Siddall and Eugene F. Gilligan, both of New York City, of counsel), for libellant.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, Leonard J. Matteson, and Richard F. Shaw, all of New York City, of counsel), for respondents.

COXE, District Judge.

This is a motion by the libellant for an interlocutory decree on the pleadings.

The suit is brought by the libellant, owner of the motorship Southern Prince, to recover general average contributions under general average guarantees issued by the respondents.

The libellant is a British corporation. The respondents are either American or foreign insurance companies, and all are admitted to do business in New York.

The Southern Prince, while proceeding from New York to Buenos Aires with a cargo of merchandise, was in collision with the British steamship Elstree Grange in the River Plate in July, 1937. As a result of the collision, the Southern Prince sank, and salvage operations were undertaken to raise the vessel. These operations were successful, and the vessel was thereafter taken to a berth at Buenos Aires, where the cargo was discharged. Temporary re-

pairs were made at Buenos Aires and permanent repairs after the vessel arrived back in New York. The guarantees on which the suit is based were issued by the respondents to release the cargo from asserted general average liens. The details of the claims against the different respondents are shown in schedules attached to the libel.

The respondents have answered, admitting many of the allegations of the libel, and setting up by way of affirmative defense certain matters relating to Argentine law and pending Argentine court proceedings.

The libel alleges that the Southern Prince sailed from New York in June, 1937, with a cargo of general merchandise destined for Rio de Janeiro, Santos, Montevideo and Buenos Aires. The bills of lading for the cargo were issued at New York, and contained the following clauses:

"General Average shall be adjusted and payable according to York-Antwerp Rules, 1924. In the event of accident, danger, damage or disaster, before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which the shipowner is not responsible, by statute or contract or otherwise, the cargo, its Owners, Shippers and Consignees, shall contribute with the shipowner in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo.

\* \* \* \* \*

"Carriage of Goods by Sea Act.—This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936 [46 U.S.C.A. § 1300 et seq.], which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the shipowner of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further."

The collision with the Elstree Grange took place on July 14, 1937, while the Southern Prince was proceeding from Montevideo to Buenos Aires, and the answer admits that as a result of the collision the Southern Prince "partially sank and rested on the bottom and the situation became one of peril to ship and cargo".

The libel alleges that the collision was without the fault of the Southern Prince, or, in the alternative, that it was due to negligent navigation of the Southern Prince. The answer denies that the Southern Prince was without fault but admits the alternative allegation that the collision was caused by negligent navigation. It is further alleged that the "sacrifices, losses and expenses" resulting from the collision were of general average nature, and were "necessarily incurred \* \* \* for the common benefit and safety of the interests involved in the ship and cargo respectively." These allegations are denied in the answer.

After the collision, general average guarantees were issued by the respondents at New York; a general average statement was prepared by Messrs. Johnson & Higgins, average adjusters in New York; and payment of the amounts shown by the statement was demanded of the respective respondents, and refused.

The defense allegations are in substance as follows:

(1) The collision between the Southern Prince and the Elstree Grange occurred in Argentine waters, and the port of destination of the cargo was Buenos Aires.

(2) The collision was caused by the negligence of the libellant, and under Argentine law the libellant is liable for all damages sustained by cargo as well as for all general average expenses.

(3) The Argentine law provides that expenses occasioned by the fault or negligence of the captain or any of the crew of the vessel shall not be counted as general average, even though voluntarily incurred after due counsel held, for the good of ship or cargo.

(4) The libellant commenced suit in the Argentine court upwards of three years ago to determine the responsibility for the damages arising out of the collision with the Elstree Grange, and as part of this suit cargo has asked for damages against the libellant and prayed for a decision that cargo is not liable for any contribution in general average for the expenses incurred. In this suit, the Argentine court has ruled that the rights and liabilities of the parties with respect to contribution in general average should be determined according to Ar-

gentine law, and that the Argentine court has jurisdiction to pass on the issues. The Argentine litigation is still pending, and it is alleged that the present suit was started to forestall final disposition by the Argentine court.

On this showing, I think it is clear that this court should not undertake to determine the issues on the pleadings.

First: The so-called Jason clause in the bills of lading allows the shipowner to participate in general average if he is "not responsible, by statute or contract or otherwise for the consequences of the disaster." The collision occurred in Argentine waters, and liability is governed by Argentine law. Restatement of Law of Conflict of Laws, Sec. 409. The respondents in their answer allege that under this law the libellant is liable for all damage to cargo. Whether the Argentine law in this respect has been overridden by the clause in the bills of lading incorporating the Carriage of Goods by Sea Act (46 U.S.C.A. § 1304) presents a question which cannot properly be decided on motion for judgment on the pleadings.

Second: It is conceded that the rights and liabilities of the parties in general average are to be determined by the law of the port of destination, which, in the present case, is the law of Argentine. Where there are special contract provisions limiting or modifying the application of this law, the extent and effect of these provisions cannot be determined "apart from consideration of the rule limited", i. e., without consideration of the law of the port of destination. Charter Shipping Co. v. Bowring, Jones & Tidy, 281 U.S. 515, 517, 518, 50 S.Ct. 400, 74 L.Ed. 1008. In the present case, the extent and effect of the contract clauses in the bills of lading require a fuller showing of the Argentine law than has been made or is possible on such a motion as the present one.

Third: The libel alleges that the sacrifices, losses and expenses to which the cargo is asked to make contribution were of general average nature, and were necessarily incurred for the common benefit and safety of the interests involved in the ship and cargo. These allegations are denied in the answer, and questions of fact are thus presented which must be tried.

There is also a question raised by the respondents as to whether this court should stay the prosecution of the suit pending the final determination of the Argentine litigation. The libellant itself first sought the jurisdiction of the Argentine court, and did not commence the present suit until after the Argentine litigation had been well advanced towards completion. Moreover, the persons primarily liable for the payment of any general average charges are the owners and consignees of the cargo, and most of these persons are of foreign nationality. The issues here are all involved in the Argentine litigation, and it would seem that in the interest of economy and expedition they could best be determined there with all the interested parties before the court. Under these circumstances, I think that jurisdiction should be retained, but that further prosecution of the suit should be stayed for a reasonable time pending final determination of the Argentine litigation.

The motion of the libellant for an interlocutory judgment on the pleadings is denied, and further prosecution of the suit is stayed for a reasonable time pending final determination of the Argentine litigation.