A. A. SCHADE, doing business as Schade & Company, Libelant-Appellant,

v.

NATIONAL SURETY CORPORATION and Continental Insurance Company, Respondents-Appellees.

No. 274, Docket 26482.

United States Court of Appeals Second Circuit.

Argued Feb. 23, 1961.

Decided April 4, 1961.

Donald B. Allen, New York City (Edward A. Neiley, and Hill, Betts, Yama-oka, Freehill & Longcope, New York City, on the brief), for libelant-appellant.

J. Edwin Carey, New York City (Hill, Rivkins, Middleton, Louis & Warburton, New York City, on the brief), for respondents-appellees.

Before HINCKS and MOORE, Circuit Judges, and BRENNAN, District Judge.*

HINCKS, Circuit Judge.

This is a suit in admiralty by a general average adjuster against the cargo underwriters to recover the amount charged to cargo as its contribution to general average. The M/V Manabi left Tampa, Florida on April 23, 1953, with a cargo of cigarettes destined for Ecuador. The next day, water entered the ship through a hole in the hull on the forward starboard side five feet below water line. The Manabi was intentionally grounded, and was a constructive total loss. Cargo, however, was salvaged.

A clause in the bill of lading provided:

"If the shipowner shall have exercised due diligence to make the ship in all respects seaworthy and to have her properly manned, equipped and supplied, it is hereby agreed that in case of danger, damage or disaster resulting from fault or error in navigation or in the management of the vessel or from any latent or other defect in the vessel, her machinery and appurtenances, or from unseaworthiness, although existing at time of shipment, or at the beginning of the voyage (provided the defect or unseaworthiness was not discoverable by the exercise of due diligence), the shippers, consignees and/or owners of the cargo shall nevertheless * * * contribute with the shipowners in general average to the payment of any sacrifice, losses or expenses of a general average nature * * *."

It is undisputed that the loss of the Manabi was one "of a general average na-

---

* Sitting by designation.

ture." Hence, the adjuster may recover if he can prove the existence of the conditions of this clause, including that the owners exercised "due diligence to make the ship in all respects seaworthy."

The trial court dismissed the libel on the ground that libelant failed to meet his burden of proving that the shipowner had exercised due diligence to make the Manabi seaworthy at the commencement of the voyage.

 Appellant argues that this holding is reviewable here as a matter of law, relying on Continental Ins. Co. v. United States, 2 Cir., 195 F.2d 527. We disagree. There the court treated as a question of law the question whether a certain test, conceded to have been conducted, constituted "due diligence." Here at issue were questions as to what tests were reasonably required and what tests had in fact been made. These were questions of fact, Huilever, S.A. Division Huileries Du Congo Belge v. The Otho, 2 Cir., 139 F.2d 748; Artemis Maritime Co. v. Southwestern Sugar & Molasses Co., 4 Cir., 189 F.2d 488, 491, as to which the findings were not clearly erroneous.

The libelant's evidence, which failed to persuade the trial court, was indeed meager. The engineer testified that the ship had been given "the usual routine inspection," although this was not defined. The captain indicated that he inspected "the whistle and telephone and stearing gear and things like that." There is no direct statement that the walls of the hull were actually subjected even to the most casual visual inspection. Most of the evidence seems to have been offered to prove that the hole was caused by the tearing away of the bilge keels. But that was controverted and even if taken as established would not necessarily be decisive of the owner's diligence. "Taking the evidence in the as-

pect most favorable to the shipowner there was at least justification for a doubt in the mind of the judge as to the adequacy of proof of due diligence." Globe & Rutgers Fire Ins. Co. v. United States, 2 Cir., 105 F.2d 160, 164, certiorari denied 308 U.S. 611, 60 S.Ct. 175, 84 L.Ed. 511. We must, therefore, affirm the court's holding that the appellant had not sufficiently established his diligence in providing a seaworthy vessel.

Such a failure of proof has been held by the Supreme Court, under a general average clause substantially identical with this one, to bar claims for general average contributions against cargo. May v. Hamburg-Amerikanische Packetfahrt Aktiengesellschaft, 290 U.S. 333, 54 S.Ct. 162, 78 L.Ed. 348. And see The West Arrow, 2 Cir., 80 F.2d 853, 858; The Maria, D.C.S.D.N.Y., 15 F.Supp. 745, 750–51.

Appellant vigorously protests reliance on such precedents as these. He points out, truly, that these are Harter Act, 46 U.S.C.A. § 190 et seq., cases, and argues that they are not pertinent to the instant case which is governed by the Carriage of Goods by Sea Act [Cogsa], 46 U.S.C.A. § 1300 et seq. But nothing in Cogsa made the contract clause now before us unlawful—at most Cogsa, by further restricting the measure of the shipowner's liability,[1] suggested a modification in public policy which permitted a shipowner, if he so desired, to contract for a general average clause of considerably broader reach.[2] But the clause now before us was one appropriate and lawful under the Harter Act: merely because under Cogsa a different clause more favorable to the shipowner would have been lawful is irrelevant. Consequently, pre-Cogsa cases under the Harter Act are apposite precedents.

Affirmed.

1. See Gilmore & Black on Admiralty 133–134.

2. Id., 243–245.