ARGYLL SHIPPING CO., Ltd., Plaintiff,

v.

The HANOVER INSURANCE COM-
PANY et al., Defendants.

No. 67 Civ. 3526.

United States District Court
S. D. New York.

May 17, 1968.

Bigham, Englar, Jones & Houston, New York City, for plaintiff; Sheldon A. Vogel, Julian S. Gravely, Jr., and Charles A. Doyle, New York City, of counsel.

Kelly, Donovan, Robinson & Maloof, New York City, for defendants; James J. Donovan, Francis V. Elias and James M. Kenny, New York City, of counsel.

METZNER, District Judge:

This is an action brought under the general admiralty jurisdiction of the United States to recover on behalf of a shipowner $24,413.97, the total amount of general average contributions allegedly owed by the defendants, seven Japanese insurance companies and the Hanover Insurance Company of New York.

The three defendants upon whom service of process was successful in this district seek an order pursuant to Fed. R.Civ.P. 12(b) dismissing the complaint as time-barred for laches or, in the alternative, on the grounds of forum non conveniens.

The proceeding arises from a voyage of the plaintiff's vessel S. S. Percy Jordan in November 1963 from ports in British Columbia to Japan. En route to the Far East, the vessel encountered heavy weather, causing her to run short of fuel as a result of which towage was required into Tokyo. Upon arrival in Japan, the plaintiff declared a general average to cover the additional expenses incurred and selected New York as the place of general average adjustment pursuant to provisions in its bills of lading. Before it would discharge the cargo in Japan, plaintiff required the execution of general average agreements on behalf of the cargo owners, shippers and consignees, together with the undertakings of the defendant underwriters to pay all general average contributions properly assessed after the completion of the general average adjustment.

The general average adjustment was completed in New York on April 1, 1966 and a general average statement made out by the adjusters, calling for contributions on behalf of the cargo interests in the total amount of $24,413.97. Copies of the statement were mailed to the defendant underwriters on April 4, 1966. There followed a protracted series of communications among plaintiff, the adjuster, the underwriters and respective counsel, about which more will be said below. Suffice to note here that these discussions culminated in a letter dated August 28, 1967, in which the defendants stated their intention to resist payment of the contributions assessed. The instant suit was commenced on September 14, 1967.

I. *Laches*

In determining whether the plaintiff is guilty of laches, the admiralty court will as a rule look to an applicable state or foreign statute of limitations for analogy. The initial question presented, therefore, is the choice of the applicable statute of limitations.

In support of their motion to dismiss, the defendants argue that the applicable statute of limitations is Article 78 of the Commercial Code of Japan, the place where the voyage terminated. This section provides:

"Claims arising from general average or from a collision between ships shall

be extinguished by prescription upon the lapse of one year. 2. The period mentioned in the preceding paragraph shall be computed in the case of general average, from the time which [sic] its adjustment was completed."

Since this suit was not commenced until seventeen months after completion of the adjustment, the limitations period would have run if, as defendants contend, the Japanese provision is the proper analogous statute. The plaintiff insists that the proper analogy is not to the Japanese Code, but to New York State law, more particularly the six-year statute of limitations governing contracts made or to be principally performed in New York. The basis for plaintiff's choice of law preference is its assertion that this suit is not one for general average contributions, but rather a contract action upon defendants' undertakings to pay general average contributions at the place of adjustment, New York City. If plaintiff is correct, then this suit was brought well within the six-year contracts limitations period. The determination of the proper characterization to be applied here cannot be done mechanically and without due regard for the true nature of the competing interests involved. See, e. g., Schiavone-Bonomo Corp. v. Buffalo Barge Towing Corp., 132 F.2d 766 (2d Cir. 1942).

■ Undertakings are executed in an emergency in order to obtain release of the cargo. By his undertaking, the insurer merely steps into the shoes of the cargo consignee, agrees to pay his liability for general average contributions if and when it arises, and posts security for such payment. See Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., 274 F.Supp. 884, 892 (D.Md.1967); Gilmore & Black, The Law of Admiralty 225 (1957). The courts have always referred to suits such as this as though they were suits directly to recover general average contributions. See Barnard v. Adams, 51 U.S. 270, 10 How. 270, 13 L.Ed. 417 (1850); Schade v. National Surety Corp., 186 F.Supp. 423 (S.D.N.Y. 1960), aff'd, 288 F.2d 106 (2d Cir.

1961); The Southern Prince, 47 F.Supp. 470 (S.D.N.Y.1942); Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 15 F.2d 202 (S.D.N.Y.1925). While it is true, as plaintiff contends, that none of these cases involved the limitations question presented here, they nevertheless illustrate the true nature of this kind of lawsuit. Furthermore, in Corrado Societa Anonima DiNavagazione v. L. Mundet Sons, Inc., 18 F.Supp. 37, 41 (E.D.Pa.1936), aff'd, 91 F.2d 726 (3d Cir.), cert. denied, 302 U.S. 751, 58 S.Ct. 271, 82 L.Ed. 581 (1937), it was recognized that a general average agreement and bond is merely "a substitute for the common-law lien for general average which the ship owner has upon the cargo" and that consequently, "the ship owner's rights under it should rise no higher than what they would be if he were asserting his lien." See also Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., supra 274 F.Supp. at 894–896. Among these rights which should be unaffected by the undertakings is the shipowner's time in which to bring suit. The time in which to sue on a general average undertaking should be no longer than in a suit to recover general average contributions directly.

■ The determination that this is a suit to recover general average contributions does not, however, lead us directly to the Japanese one-year statute as defendants suppose. It is not disputed that in general average suits the substantive law of the port of destination applies. The Southern Prince, supra; Compagnie Francaise, supra; Gilmore & Black, supra at 229. Nevertheless, merely because the instant cause of action is governed by Japanese substantive law does not mean that a federal admiralty court is automatically free to apply the Japanese statute of limitations.

■ The proper method for the admiralty court to adopt in choosing the correct statute of limitations in an action arising under foreign substantive law is set forth in Bournias v. Atlantic Maritime Co., 220 F.2d 152 (2d Cir. 1955). The rule there propounded is that stat-

utes of limitations are procedural and the law of the forum controls, except where they specifically limit a right created by statute. The general average contribution is not a statutory right, but rather a right created by general maritime law recognized by all principal maritime nations. Cia. Atlantica Pacifica, S. A. v. Humble Oil & Refining Co., *supra* 274 F.Supp. at 891; Gilmore & Black, *supra* at 220–221.

■ Thus, under the *Bournias* rationale, we must look to the New York statute of limitations, including CPLR § 202, New York's "borrowing statute," as the guide to determining the question of laches. Whether the New York statute governing this suit is three years (CPLR § 214) or six years (CPLR § 213), under § 202 the shorter one-year Japanese statute would govern if the New York courts would say this action "accrued" in Japan. As in George v. Douglas Aircraft Co., 332 F.2d 73, 78 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964), I "perceive no obstacle" to predicting that the New York courts would hold in accordance with universal maritime law principles that a cause of action for general average contributions accrues in the port of destination.

■■ Plaintiff argues that, even if a Japanese statute of limitations is to be applied, defendants have failed to prove that the one-year provision of Article 78 would be applied by the Japanese courts in this case. In the absence of any indication to the contrary, this court is entitled to assume that the words "arising from general average" in the authorized English translation of the Commercial Code of Japan would mean the same thing in a Japanese court that they do here. A federal court is given great leeway in determination and application of foreign law. Fed.R.Civ.P. 44.1 and Advisory Committee Note, 39 F.R.D. 69, 117–119. Furthermore, I am convinced from examination of the affidavits of Japanese attorneys which were submitted by the defendants that the affiants were familiar with the precise nature of this proceeding when they averred that Article 78 would be applied to such a case in a Japanese court. Therefore, I conclude that Article 78 of the Commercial Code of Japan is the statute of limitations which this court should consider in passing on the claim of laches.

■ Of course, the Japanese statute is to be applied only as an analogy, and we must now consider whether or not plaintiff has been guilty of laches. Since suit was commenced six months after the end of the one-year period, the burden is upon the plaintiff to demonstrate both a reasonable excuse for its own delay as well as the absence of prejudice to the defendant. Larios v. Victory Carriers, Inc., 316 F.2d 63 (2d Cir. 1963). Plaintiff here argues that the delay of eighteen months after the completion of the general average adjustment and six months after expiration of the limitations period was reasonable because during that entire time the parties and counsel were conferring and exchanging correspondence concerning the validity of the assessment of contributions against defendants. Much of that correspondence is attached to the motion papers. From the letters dated May 23, 1966, September 1, 1966, March 27, 1967, and August 28, 1967, it seems clear that there is at least an issue of fact as to whether the delay was reasonable. Proof of what transpired in the interstices between these letters would be particularly helpful. Furthermore, as to the question of prejudice to defendants, it seems that most, if not all, of the witnesses who will be able to testify on the circumstances of the voyage giving rise to the general average, as well as the general average adjusters, are within the control of the plaintiff and can be produced.

■ As a general rule, the question of laches is essentially one of fact addressed to the discretion of the trial court. Gardner v. Panama R. Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951); Molnar v. Gulfcoast Transit Co., 371 F.2d 639 (5th Cir. 1967); McConville v. Florida Towing Corp., 321 F.2d 162 (5th

Cir. 1963). Where, as here, the motion papers indicate a genuine question of fact and there is a substantial possibility that the party having the burden of proof on delay and prejudice will be able to sustain it, determination of the issue should await trial. Alberts v. American President Lines, Ltd., 207 F.Supp. 666 (S.D.N.Y.1962). The rule that the plaintiff must *plead* facts showing absence of laches where it is clear on the face of the pleadings that the applicable statute of limitations has expired, Cleary Brothers, Inc. v. Luria Steel & Trading Corp., 198 F.Supp. 567 (S.D.N.Y.1960), is not binding here, since it has only just been determined what the applicable statute is.

## II. *Forum Non Conveniens*

Defendants' second contention, that this lawsuit should be dismissed on the grounds of forum non conveniens, need be considered only briefly. A plaintiff's choice of forum is entitled to great weight and will not be disturbed except upon a clear-cut showing by the defendant that convenience and justice for all parties demands that the litigation proceed elsewhere. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Defendants have failed to make such a showing. The factors they rely upon as weighing against this forum are: the route of the voyage, the foreign nationality and corporate domicile of plaintiff and all but one of the defendants, the residence of the ship's officers and crew, and the execution of the undertakings and policies of insurance in Japan. Yet few of these factors substantially diminish the ability of the defendants to try this lawsuit in New York. The execution of the undertakings in Japan does not appear to be a major issue in this case. The writing of the insurance there certainly is not. Nor does it seem that any of defendants' Japan-based employees would have firsthand knowledge of the facts giving rise to the general average. Rather, the primary issues in the lawsuit will depend upon evidence adduced by the general average

adjusters in New York, and by the officers and crew of the ship, who plaintiff represents are under its control and will be made available in New York. Furthermore, it appears that all of the vessel's books and logs, as well as all cargo documents concerning the voyage, were brought to New York in connection with the general average adjustment and remain here. The moving defendants, moreover, all have sufficient contacts with this forum to have been amenable to service here. On balance, I conclude that the plaintiff has chosen a convenient and justifiable forum.

Defendants' motion to dismiss is denied.