196

In re NATIONAL BUY–RITE, INC.

William G. McDANIEL, Trustee,
Plaintiff,

v.

AMERICAN DRUGGISTS INSURANCE
COMPANY, Timothy A. Siler and
Lawrence D. Mabry, Defendants.

Bankruptcy No. 80–00309A.
Adv. No. 80–0231A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

May 28, 1981.

Alan L. Dye, McDaniel, Chorey & Taylor, Atlanta, Ga., for plaintiff.

Timothy A. Siler, pro se.

ORDER

HUGH ROBINSON, Bankruptcy Judge.

This matter comes before the court on plaintiff's motion for summary judgment filed September 5, 1980. Having considered the motion, the briefs and supporting documents submitted by the parties, the deposi-

tion of defendant Timothy A. Siler and the pleadings on file the Court makes the following decision.

## FINDINGS OF FACT

National Buy-Rite, ("Buy-Rite"), was a corporation engaged in the business of providing buying services to its members. It was required by the law of the state of Georgia to maintain a surety bond payable to the Governor of Georgia to cover any losses sustained by its members as a result of Buy-Rite's fraudulent misrepresentation or breach of contract. American Druggists' Insurance Company, ("American Druggists"), served as a surety for Buy-Rite pursuant to a contract entered into on August 14, 1979. The liability of American Druggists was limited to $25,000.00. By the terms of a "Collateral Security Receipt and Agreement" entered into by these two parties Buy-Rite was required to deposit $12,-500.00 with American Druggists to secure American Druggists' liability under the surety contract.

Timothy A. Siler, ("Siler"), and Lawrence D. Mabry, ("Mabry"), guaranteed certain obligations owed by Buy-Rite to Sumner Communications, Inc. The guarantees were executed on August 17, 1979, a time when both Siler and Mabry were directors and officers of Buy-Rite. In connection with this transaction Buy-Rite pledged as security for the guarantees the $12,500.00 deposit held by American Druggists. In a letter dated August 24, 1979 Siler notified American Druggists of the security interest claimed by Siler and Mabry.

Buy-Rite filed a petition under Chapter 7 of Title 11 of the United States Code on January 31, 1980 and William G. McDaniel, ("Plaintiff"), was appointed trustee. On March 19, 1980 Plaintiff commenced the instant adversary proceeding to recover the $12,500.00 security deposit held by American Druggists.

The above-stated facts are undisputed. Siler contends that American Druggists holds the deposit as bailee, therefore Siler's letter of August 24, 1979 was sufficient to perfect the security interest of Siler and Mabry. Plaintiff argues that American Druggists is not a bailee, therefore Siler's letter was ineffective to perfect a security interest in the deposit.

## APPLICABLE LAW

■ Generally a security interest in money is perfected by the taking of possession thereof by the secured party. Ga.Code Ann. § 109A–9–304(1); *In Re: Atlanta Times, Inc.,* 259 F.Supp. 820 (N.D.Ga.1966) affirmed *Sanders v. National Acceptance Company of America,* 383 F.2d 606 (5th Cir. 1967). However, Ga.Code Ann. § 109A–9–305 provides:

"A security interest in letters of credit and advices of credit (subsection [2][a] of section 109A–5—116), goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Article. The security interest may be otherwise perfected as provided in this Article before or after the period of possession by the secured party."

The issue presented in this case is whether American Druggists is a bailee. Because there is no definition of bailee in Article 9 of Title 109A[1] it is necessary to refer to state law to determine what is necessary to create a bailment. See *Heinicke Instruments Company v. Republic Corporation,* 543 F.2d 700 (9th Cir. 1976).

---

1. Ga.Code Ann. § 109A–7–102(1)(a) defines a bailee as "the person who by a warehouse receipt, bill of lading or other document of title acknowledges possession of goods and con-tracts to deliver them". However this definition is restricted to Article 7 by the terms of Ga.Code Ann. § 109A–7–102(1).

Ga.Code Ann. § 12–101 defines a bailment as follows:

> "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee, or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust."

■ An essential element of the bailor-bailee relationship is the actual or constructive delivery of property to the bailee who thereby acquires independent and temporarily exclusive possession of the delivered property. *Atlantic Coast Line Railroad Company v. Baker*, 118 Ga. 809, 45 S.E. 673 (1903); *Davidson v. Ramsby*, 133 Ga.App. 128, 210 S.E.2d 245 (1974). A bailee acquires no title in the property he holds as bailee. His interest is limited to a right of possession for which he may maintain an action if this right is impaired. Ga.Code Ann. § 12–102; *Lockhart v. The Western and Atlantic Railroad*, 73 Ga. 472 (1885); *Macon Dublin and Savannah Railroad Company v. Heard Brothers*, 27 Ga.App. 382, 108 S.E. 481 (1921); *United States v. One 1946 Mercury Sedan Automobile*, 100 F.Supp. 957 (N.D.Ga.1951) affirmed *United States v. Frank Graham Company*, 199 F.2d 499 (5th Cir. 1952).

In cases where it was held that a security interest was perfected in goods held by a bailee, the bailee was a third party who did not assert an interest in the bailed property. Illustrative cases include *In Re: Copeland*, 391 F.Supp. 134 (D.Del.1975) modified 531 F.2d 1195 (3rd Cir. 1976) (security interest in stock held in escrow by a trust company); *Barney v. Rigby Loan & Investment Company*, 344 F.Supp. 694 (D.Idaho 1972) (security interest in checks held in trust by the debtor's attorney); *In Re: Miller*, 545 F.2d 916 (5th Cir. 1977) cert. denied 430 U.S. 987, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977) (security interest in paintings and sculptures consigned to an art gallery); and *Gamble v. Hinds*, 8 U.C.C.Rep. 3 (Cal.App.1970) (security interest in stock held in escrow by a law firm).

■ The fund involved in the instant case was delivered to American Druggists by Buy-Rite pursuant to a document entitled "Collateral Security Receipt and Agreement". According to the terms of the agreement the money was deposited with American Druggists to secure the performance of every agreement made by Buy-Rite in connection with the surety bond; the payment of premiums on the bond; liability, loss or other costs incurred in connection with the surety bond; and liability, loss or other costs incurred in connection with any claim to the $12,500.00 asserted by persons claiming adversely to Buy-Rite. The agreement further authorizes American Druggists to use the collateral at any time, without legal notice, to accomplish the purposes of the security agreement; to apply the deposit to payment or reimbursement for the losses, costs and expenses secured thereby; to sell the collateral; or to deposit, invest, convert, cash, exchange, renew or dispose of the collateral.

There are analogies between a bailor-bailee relationship and that between Buy-Rite and American Druggists. The deposit was delivered by Buy-Rite to American Druggists' pursuant to an express contract for the execution of a special object, that object generally being the collateralization of American Druggists' liability on the surety bond. However, the interest of American Druggists in the deposit goes beyond the special property interest a bailee has by virtue of his right to possession of the bailed property. Under the collateral security agreement American Druggists may look to the deposit for the satisfaction of any claim it may have against Buy-Rite for any liability it may incur in connection with the surety bond, for the failure of Buy-Rite to perform any of its agreements made in connection with the surety bond and for any liability or other expenses incurred by American Druggists with respect to any claim to the deposit made by persons claiming adversely to Buy-Rite. Furthermore American Druggists is authorized to apply the deposit toward the satisfaction of such claims without giving legal notice to Buy-Rite. The Court finds that American

Druggists' interest in the deposit which extends beyond a mere right of possession and the considerable authority granted to American Druggists with regard to the disposition of the deposit are incompatible with the concept of bailment as defined by Georgia law. Accordingly the Court concludes that American Druggists does not hold the $12,500.00 fund as bailee.

Siler argues that American Druggists' interest, if any, in the deposit is relatively small, therefore the remaining balance is held by American Druggists as bailee. The Court does not agree with this argument. A surplus remaining after collateral has been disposed of is not property delivered to the creditor for the execution of a special purpose pursuant to an express or implied contract, rather it is property remaining after the creditor's claim has been satisfied and in which the creditor has no interest or right of possession.[2]

A motion for summary judgment may be granted when there are no genuine issues of material fact remaining to be tried. Rule 56(c) of the F.R.Civ.P. Siler contends that there are issues of fact remaining to be tried with regard to whether American Druggists is a bailee and whether Siler's security interest is perfected. However bailment and perfection are legal concepts and the issues of whether American Druggists is a bailee and whether Siler's security interest is perfected are legal, not factual, issues. The Court determines that there are no genuine issues of material fact remaining to be tried in this case, therefore summary judgment is appropriate.

Because American Druggists is not a bailee, Siler's letter to American Druggists, dated August 24, 1979 did not perfect Siler's security interest in the deposit. Plaintiff, as the trustee in bankruptcy, occupies the status of a judgment lien creditor under 11 U.S.C. § 544(a)(1). The lien of a judgment lien creditor has priority over an unperfected security interest. Ga.Code Ann. § 109A–9–301(1)(b). Therefore Plaintiff's interest in the deposit is superior to the

unperfected security interest of Siler. It is therefore

ORDERED that Plaintiff's motion for summary judgment shall be and same is hereby granted.

SO ORDERED.

---

2. Under Ga.Code Ann. § 109A–9–504(2) a secured party must account to the debtor for any surplus remaining after disposition of the collateral.