In re AYERS AVIATION HOLDINGS, INC., Debtor.

First National Bank of South Georgia, Plaintiff,

v.

Ayers Aviation Holdings, Inc., GATX Capital Corporation, Zlatava Davidova, Trustee of LET, a.s. and General Electric Company, Defendants.

Bankruptcy No. 00–11881.
Adversary No. 01–1003.

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Aug. 21, 2002.

Jesse C. Stone, Merrill & Stone, Swainsboro, GA, for debtor.

Stephen G. Gunby, Fife M. Whiteside, Columbus, GA, Deborah D. Williamson, Cox & Smith, Inc., San Antonio, TX, for creditors.

### MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On August 7, 2002, the court conducted a trial on the complaint of First National Bank of South Georgia ("Plaintiff") to determine the validity, priority and extent of liens or other interest in certain property. At the conclusion of the trial, the court took the matter under advisement. After considering the evidence, the parties' briefs, stipulations and oral arguments as well the applicable statutory and case law, the court makes the following findings of fact and conclusions of law.

### Procedural History

On November 27, 2000, Ayers Aviation Holdings, Inc., Ayers Corporation, and the Fred Ayers Company filed voluntary petitions under Chapter 11 of the Bankruptcy Code ("Code"). These cases have been administratively consolidated. On February 8, 2001, Plaintiff filed this adversary proceeding in the Ayers Aviation Holdings, Inc. ("Debtor") case. Plaintiff seeks a determination of the validity, priority, or extent of a lien or other interest in two General Electric aircraft engines. The complaint also requests that the court preliminarily enjoin the defendants from removing the aircraft in which the engines have been installed from Debtor's facility located in Albany, Georgia.

Only Debtor, Zlatava Davidova, Trustee of LET, a.s., and GATX Capital Corporation ("GATX") were named as defendants in the original complaint.[1] General Electric Company ("General Electric") was not a defendant in Plaintiff's original complaint. GATX filed a motion to dismiss for Plaintiff's failure to join General Electric as a defendant. On February 22, 2001, the court held a hearing on GATX's motion to dismiss. In accordance with the announcements made at the hearing, the court entered an order granting Plaintiff leave to amend to add General Electric as a defendant. The parties agreed that they would not remove the aircraft with the subject engines from the jurisdiction of the court. Therefore, on March 5, 2001, Plaintiff filed a restated complaint which deleted the prayer for a preliminary injunction and added General Electric as a defendant.

In its answer, Debtor asserts cross-claims and counterclaims seeking a determination of the validity, priority and extent of liens and competing interests in the aircraft and its two engines. Debtor also seeks a determination of its avoidability of

---

1. The court notes that John Kennedy, the appointed Chapter 11 trustee in this case, is the actual party in interest for Debtor. LET, a.s. is a Czech Republic entity involved in a liquidation proceeding in the Czech Republic. Likewise, Zlatava Davidova, the trustee for LET, a.s. in its liquidation proceeding, is the actual party in interest for LET.

these interests and authority as trustee to dispose of these assets. In response to Debtor's cross-claim, GATX sought, among other things, relief from the automatic stay. On October 23, 2001, the court granted GATX's request to consolidate this motion with the adversary proceeding so that it would be heard at the same time the adversary proceeding is tried.

On May 17, 2002, the court held a Final Pre–Trial Conference in this adversary proceeding. At the hearing, the court approved and adopted the pre-trial order submitted by the parties. The parties raised the issue of which law should govern the validity, priority, and extent of liens in the subject property. After considering the parties' briefs on this issue, the court found that the law of the Czech Republic was controlling as to this issue. Because GATX admitted that it did not have a perfected security interest under the law of the Czech Republic, the court granted the parties' motion to strike the responsive pleadings of GATX.

### FINDINGS OF FACT

Many of the pertinent facts are not disputed. Debtor is a corporation organized under the laws of the State of Florida. Fred P. Ayers is the sole shareholder of the Debtor corporation. Formed in 1991, LET, a.s. ("LET") is a legal entity organized under the laws of the Czech Republic.

Both LET and Debtor were in the business of manufacturing aircraft. LET manufactured the type L610 G aircraft ("L610"). In 1997, LET manufactured a L610, Serial No. 970301 ("L610–301"). Installed in this aircraft are two General Electric Model HE CT7–9D engines, Serial Nos. GE–E–685998 ("998 engine") and GE–E–685002 ("002 engine"). The L610–301 and the two engines are the subject property to this adversary proceeding.

On May 13, 1997, this aircraft was registered with the Civil Aviation Authority Register of the Czech Republic, Register No. 4770, with LET designated as its owner. (*See* LET Exh. 1).[2] Also, the Civil Aviation Authority issued the L610–301 a Special Certificate of Airworthiness, No. ZO1Z–4770/4, in the experimental aircraft category. (*See id.*).

On or about August 11, 1998, Debtor acquired approximately 93% of the outstanding shares of stock of LET. At the time of this acquisition, Zdenek Pernica was serving as the "director general" of LET. Mr. Ayers testified that he understood a director general to be the equivalent of a president or chief executive officer. Mr. Pernica was subsequently replaced by Mr. Preston Turner Bostwick.[3] Many members of management of LET were also replaced with individuals who were associated with the Debtor.

The management structure of LET, at least after Debtor's acquisition, consisted of a board of directors and two "Procurators." (*See* Pl.'s Exh. 13). Mr. Ayers held the position of chairman of the board of directors and also served as one of the two Procurators. Mr. Bostwick served as the other Procurator and also served as a member of the board of directors. (*See id.*) Although Mr. Ayers made most of the decisions for LET, Mr. Ayers testified that he never attended any of the meetings held by the board of directors.

---

**2.** At trial, however, Mr. Ayers testified that the registration with the Civil Aviation Authority of the Czech Republic "has nothing to do with ownership."

**3.** *See* Pre–Trial Order, Exh. "A", para. 3. However, Mr. Ayers testified at the trial that Mr. Pernica resigned in June 1999.

Based on the "Companies Register maintained by the Regional Court in Brno.," ("Register") at least two directors are required to act for or on behalf of LET. (*See id.*) As to the authority of the Procurators, the Register provides:

Each Procurator is authorised [sic] to act for and on behalf of the Company severally within the scope of the Procuration granted. Each of the Procurators is authorised [sic] to perform legal acts in writing for and on behalf of the Company LET, a.s., severally by attaching his signature and the word "Procurator" to the written or printed style of LET, a.s.

(*Id.*).

On May 19, 2000, Mr. Ayers, on behalf of "LET Aeronautical Works,"[4] executed a Bill of Sale, Assignment and Conveyance ("Bill of Sale"). (*See* Pl.'s Exh. 1). Mr. Ayers signed the Bill of Sale as "Chairman." (*See id.*). The Bill of Sale purported to memorialize a sale of the L610–301 aircraft with the attached 998 and 002 engines from LET to Debtor. As consideration for this purchase, Mr. Ayers testified that Debtor and Ayers Corporation, Debtor's affiliate, transferred avionics and cash to LET in 1999 and 2000.

Also on May 19, 2000, Mr. Ayers, on behalf of Debtor, entered into a loan agreement with Plaintiff in which Plaintiff loaned $200,000.00 to Debtor. (*See* Pl.'s Exhs. 2 & 5). In exchange for these funds, Debtor executed a document purporting to grant Plaintiff a security interest in the 002 and 998 engines. (*See* Pl.'s Exh. 6). On May 22, 2000, Plaintiff filed a UCC–1 financing statement in the Superior Court of Dougherty County. (*See* Pl.'s Exh. 10). On July 17, 2000, Plaintiff recorded its security interest in the two engines with the Federal Aviation Adminis-

tration ("FAA"). (*See* Pl.'s Exh. 8). Debtor and Plaintiff have stipulated that as of the date of the trial, the principal amount which Debtor is indebted to Plaintiff is $200,125.00 plus $45,261.60 in interest accruing at $63.92 per day.

On or about August 30, 2000, liquidation proceedings were initiated against LET under the laws of the Czech Republic. Zlatava Davidova ("LET Trustee") is the trustee of the estate of LET.

As to the contentions of the parties, Plaintiff contends it has a perfected security interest in the two engines. Plaintiff asserts that the conveyance of the L610–301 and the two engines from LET to Debtor was proper. As a result, Debtor owned the aircraft and its engines at the time Debtor pledged the two engines as collateral. Because both engines were rated at a horsepower of greater than 750, Plaintiff argues that its registration with the FAA is the proper means by which to perfect its security interest.

General Electric contends that neither Debtor nor LET owned the 998 engine. General Electric does not dispute that LET purchased the 002 engine from General Electric for a purchase price of $750,400.00. (*See* Pre–Trial Order, Exh. "A", para. 7; *see also* Pl.'s Exhs. 11 & 12). Accordingly, General Electric claims no interest in the 002 engine. However, General Electric argues that the 998 engine was loaned to LET under the terms of a bailment agreement. (*See* GE Exh. 1).

On April 17, 1997, LET and General Electric entered into a contract ("LET/GE Contract") whereby General Electric would supply and sell CT7–9 engines to LET which would, among other things, manufacture L610G aircraft. (*See* GE–1). The LET/GE Contract was to be effective during the Development Phase, which in-

---

4. Mr. Ayers testified that LET, a.s. and LET    Aeronautical Works were the same company.

cluded the time until the L610G aircraft with the CT7–9 engine was certified by the FAA. (*See id.*, art. 1, para. G). Specifically, the LET/GE Contract provided that General Electric will supply LET with two CT7–9 engines during the development phase. These "Engines will be bailed (loaned at no charge) for the duration of the LET L610G Development Program, as per terms of Exhibit D, Bailment Agreement, herein." (*Id.*, Exh. C, para. C.4). LET and General Electric entered into the above referenced Bailment Agreement on June 3, 1997. (*See id.*, Exh. D). The Bailment Agreement defines "Bailed Property" as property General Electric provided pursuant to Exhibit C. (*Id.*, cl. 1).

Because LET did not own the 998 engine, General Electric argues that LET could not have effectively transferred the engine to Debtor. Therefore, General Electric contends that the 998 engine never became property of LET or Debtor.

Debtor contends that it properly acquired title to the L610–301 from LET through the Bill of Sale executed on May 19, 2000. Debtor argues that Mr. Ayers possessed the requisite corporate authority to execute the Bill of Sale. Also, Mr. Ayers executed the document properly. Merely because he signed the Bill of Sale as "Chairman" and not "Procurator" does not invalidate the transfer. Debtor further argues that it transferred to LET equivalent value for the aircraft and engines and had no knowledge of General Electric's claims. Therefore, Debtor asserts that it was a good faith purchaser of the aircraft and the two engines.

The LET Trustee contends that LET holds all rights, title and interest in the L610–301 and the 002 engine free and clear from any competing claims. Essentially, the LET Trustee argues that LET's purported transfer of the aircraft and engine to Debtor was ineffective.

First, the LET Trustee asserts that the Bill of Sale was improperly executed by Mr. Ayers. She points to the language in the Register which requires two directors to act in order to act on behalf of LET. Because Mr. Ayers acted independently when he executed the Bill of Sale, the LET Trustee contends that he lacked the authority to bind the company. The LET Trustee also points out that a Procurator acting severally from the other Procurator must attach the word "Procurator" to the document in order to bind the company. Therefore, even if Mr. Ayers was acting in his capacity of Procurator, the LET Trustee argues that the Bill of Sale is nevertheless invalid.

Second, the LET Trustee argues that the Bill of Sale is invalid because it does not comply with the Czech Commercial Code. According to the LET Trustee, section 409 of the Czech Republic Commercial Code requires such documents to either provide the price paid or provide a method for determining the price paid for the purported transfer.

The LET Trustee further argues that the purported transfer of the aircraft and engine was ineffective because it occurred within six months before the date on which the liquidation proceeding was filed against LET. According to the LET Trustee, section 15(1)(c) of the Czech Bankruptcy and Composition Act would void the transfer because it was made within this six-month period. As a result, the L610–301 and the 002 engine were property of LET at the time the petition was filed against LET in the Czech Republic.

Lastly, the LET Trustee contends that the transfer was ineffective because it was never registered with the Civil Aviation Authority in the Czech Republic. The LET Trustee asserts that section 5(b) of the Czech Civil Aviation Act requires the

registration of a change of ownership. The L610–301 has always shown LET as the owner on the Czech Civil Aviation Authority Registry. Accordingly, the LET Trustee argues that any purported transfer of the L610–301 is ineffective. Therefore, because the L610–301 and the 002 engine were property of LET when the petition was filed, the LET Trustee asserts they became property of LET's estate.

## CONCLUSIONS OF LAW

■ The court first addresses the contentions of General Electric and finds that the 998 engine is subject to the Bailment Agreement in the LET/GE Contract. The LET/GE Contract or the Bailment Agreement does not specifically reference the 998 engine. However, the parties have stipulated that the 998 engine was furnished to LET pursuant to the terms of an agreement relating to the L61OG aircraft. (*See* Pre–Trial Order, Exh. "A", para. 8).

■ Based on these stipulations and the language in the LET/GE Contract, the court finds that LET is a bailee of the 998 engine. *See Stephens v. Thompson*, 177 Ga.App. 528, 529, 339 S.E.2d 784, 785 (1986) (defining the requirements for a bailment). Accordingly, LET possessed no ownership interests in the engine. *See McDaniel v. American Druggists Insurance Co. (In re Nat'l Buy–Rite, Inc.)*, 11 B.R. 196, (Bankr.N.D.Ga.1981) (holding that a bailee does not acquire title to the bailed property).[5] Because LET did not own the 998 engine, LET could not have effectively conveyed it to Debtor. Therefore, the purported transfer of the 998 engine from LET to Debtor is invalid.

■ The court now turns to the Bill of Sale. The court finds that the Bill of Sale is invalid only as to the transfer of the 998 engine. As indicated above, LET did not possess title to the 998 engine thus it could not have conveyed an interest which it did not possess. However, that in of itself does not invalidate the Bill of Sale in its entirety.

As to the LET Trustee's argument that the Bill of Sale is invalid because Mr. Ayers executed the document improperly, the court rejects that argument. Although Mr. Ayers signed the Bill of Sale as "Chairman" and did not attach the word "Procurator," the evidence demonstrates that he intended to sign the document in his capacity as Procurator. The court agrees with the opinion of Mr. Petr Haluza. (*See* Pl.'s Exh. 14). Therefore, Mr. Ayers' failure to attach the word "Procurator" to the Bill of Sale does not affect its validity.

■ The court now addresses the LET Trustee's argument that the Bill of Sale is invalid because it does not comply with the Commercial Code of the Czech Republic. In the court's pre-trial order, it found that the law of the Czech Republic would govern issues relating to the validity, priority, and extent of liens. Arguably, this order is applicable to the issue of the validity of the Bill of Sale. However, the LET Trustee failed to prove the contents of this law.

■ Determining the application of foreign law is governed by FED.R.CIV.P. 44.1 ("Rule 44.1"), which is made applicable to bankruptcy cases by FED.R.BANKR.P. 9017. In pertinent part, Rule 44.1 provides:

5. The court notes that the LET/GE Contract provides that it is to be governed by the laws of England. (*See* Exh. GE–1, art. 19). However, none of the parties raised a conflict of law issue as to the LET/GE Contract. There-

fore, a federal court applies the law of the state in which it sits. *See Anderson v. McAllister Towing & Transp. Co.*, 17 F.Supp.2d. 1280, 1283 (S.D.Ala.1998). Accordingly, the court will apply the law of Georgia.

"The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law." Under Rule 44.1, "the parties have the burden of sufficiently proving foreign law in such a way that the court may apply it to the facts of the case." *Riffe v. Magushi*, 859 F.Supp. 220, 223 (S.D.W.Va.1994). "Federal courts are given great discretion in choosing source materials when application of foreign law is necessary." *Id.* (citing *Argyll Shipping Co. v. Hanover Ins. Co.*, 297 F.Supp. 125, 128 (S.D.N.Y.1968)). Moreover, "[n]othing in Rule 44.1 requires a court to engage in private research; the rule preserves the court's right to insist upon a complete presentation by counsel on the foreign law issue." *Id.* at 224.

In the instant case, the LET Trustee, on the morning of the trial, filed with the court and hand delivered to all the parties a letter by Tomas Richter, a Czech Republic attorney. In this letter, Mr. Richter provided translated portions of the Czech Civil Aviation Act and the Czech Bankruptcy and Commercial Code. Mr. Richter also included his opinions on the various provisions he provided.

As counsel for Plaintiff pointed out in his closing argument, Mr. Richter is an attorney for the same firm which filed a answer on behalf of the LET Trustee. (*See* Doc. # 24, Adv.Proc. file). For this reason, Plaintiff's counsel objected to the court's consideration of the letter based on the fact that Mr. Richter would not be competent to render an opinion. The court acknowledged that the letter had not been offered as evidence. The court then inquired whether it could consider the letter and counsel for the Plaintiff stated it could not be considered. No one announced any disagreement with Plaintiff's counsel at this time or any time before the trial concluded.

However, the LET Trustee submitted a post-trial brief. (*See* Doc. # 58, Adv.Proc. File). Because the language of Rule 44.1 allows the court to consider "any relevant material or source ... whether or not admissible under the Federal Rules of Evidence[,]" the LET Trustee argues that the court should consider Mr. Richter's letter. Further, the LET Trustee points to case law demonstrating that a sworn statement is not needed in order to meet the burden of proving foreign law.

The court agrees with the LET Trustee in that Rule 44.1 would allow the court to consider Mr. Richter's letter even though he might not qualify as a competent witness under the rules of evidence. However, the facts in this case on this issue are unique. As indicated above, the court inquired from the parties whether it could consider Mr. Richter's letter. While it is possible that Plaintiff may not have been legally accurate when, upon the court's inquiry, it asserted that the court could not consider Mr. Richter's letter, the LET Trustee did not object to Plaintiff's assertion.

Although Rule 44.1 provides that the court *may* consider inadmissible evidence on foreign law, it is clear that at the conclusion of the trial, the parties understood that Mr. Richter's letter would not be considered. Had the LET Trustee disagreed with Plaintiff at trial and put forth the argument she now advances in her post-trial brief, the court might have concluded that it could consider Mr. Richter's letter after hearing argument by all the parties. However, the LET Trustee did not do this. Therefore, the court finds that the LET Trustee failed to meet her burden of proving foreign law. As a re-

sult, the court will not consider Mr. Richter's letter.

Because the LET Trustee failed to sufficiently prove the substantive foreign law, the court rejects her arguments which rely on such substantive law. First, the court rejects her arguments that the Bill of Sale is invalid because of noncompliance with the Commercial Code of the Czech Republic. Similarly, the court rejects the LET Trustee's argument that the purported transfer of the L610–301 and the 002 engine was ineffective because under the Czech Bankruptcy and Composition Act, the transfer would be void. Also rejected is the LET Trustee's argument that the transfer was ineffective because it was never registered with the Civil Aviation Authority of the Czech Republic.

Based on the foregoing, the court finds that the Bill of Sale is valid, in that it purports to transfer from LET to Debtor the L610–301 aircraft and the 002 engine. As indicated above, the Bill of Sale is invalid only as to the purported transfer of the 998 engine. Therefore, the court concludes the following:

(1) General Electric is the title owner of the 998 engine, free and clear of any claims or encumbrances of Debtor, the LET Trustee and Plaintiff;

(2) The Bill of Sale executed on May 19, 2000 between LET, and Debtor transferred ownership in the 002 engine to Debtor. Debtor's pledge of the 002 engine to Plaintiff as collateral is valid. Plaintiff has a valid perfected security interest in the 002 engine. *See generally* 49 U.S.C. § 44107; O.C.G.A. § 11–9–302 (1994 & Supp.2000); *See also Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 413, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983) (holding that perfection of an interest in an aircraft is governed by filing under the Federal Aviation Act, however, state law determines the priority);

(3) The Bill of Sale executed on May 19, 2000 between LET and Debtor transferred ownership in the L610–301 to Debtor. The L610–301 is part of Debtor's bankruptcy estate; and

(4) The motion of GATX for relief from stay is denied.

An order in accordance with this Memorandum Opinion will be entered.